**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**ROBERT L. COLE; LILLIE R. ASH; JESSIE M. HAYNES;**
**JOYCE M. LOFTIN; DORETHA S. HICKS; RENNETE McKNIGHT;**
**RANDY BEESLEY; CHARLES WILLIAMS; SHELIA A. BOOTH;**
**BERTIE W. DAVIS; MARGARETT COLEMAN; MARY REVETTE;**
**JANET REVETTE; BRENDA JOHNSON; PATTY McDONALD;**
**DEBORAH A. MADISON; LELA M. HALL; SHARRON BUCHANAN;**
**EARNESTINE FORTENBERRY; DENISE MIKELL; JAMES**
**ARRINGTON; DERITT P. LOPER; WILLIE WOULLARD; LATOYNA Y.**
**RICHARDSON; GLORIA L. BUXTON; MILEHARMAR DODSON;**
**CHARLIE TURNER; LUE Q. WHITE; SHERRY A. BUCKLEY; TROY**
**HOUSELY; MAE HEIDELBERG; BRENDA C. RHODES; LYDIA HARRIS;**
**MILDRED D. PRICE; WILLIE McCULUM; MARY P. WALKER; JON**
**HOLLOWAY; REGINA JONES and BRENDA JENKINS, On Behalf**
**Of Themselves And All Other Similarly Situated**                    **PLAINTIFFS**

**VERSUS**                              **CIVIL ACTION NO.  2:06cv249KS-JMR**

**CHEVRON USA, INC.; CITGO PETROLEUM CORPORATION;**
**BP PRODUCTS NORTH AMERICA, INC.; EXXONMOBIL**
**CORPORATION; EXXONMOBIL OIL CORPORATION;**
**EXXONMOBIL PIPELINE COMPANY; MURPHY OIL USA, INC.;**
**SHELL OIL PRODUCTS COMPANY, LLC; And DEFENDATS**
**"A" THROUGH "Z" ENTITIES**                          **DEFENDANTS**


**MEMORANDUM OPINION AND ORDER**

        This matter is before the court on Joint Motion to Dismiss **[#8]** filed on behalf of

the defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The

court, having reviewed the motion, the response, the briefs of counsel, the pleadings

and exhibits on file and being otherwise fully advised in the premises finds that the

motion is well taken and should be granted.  The court specifically finds as follows:

## <u>FACTUAL BACKGROUND AND PROCEDURAL POSTURE</u>

This case originally involved allegations that some fifteen corporations[1] involved in the gasoline industry operating in Mississippi committed price gouging of Mississippi gasoline consumers during the state-of-emergency declared as a result of Hurricane Katrina and continuing through today.  The plaintiffs, thirty-nine consumer residents of Mississippi, seek class-certification as representatives of "all persons who purchased gasoline during the declared state of emergency at an inflated price as compared to the price before the state of emergency was declared."  Complaint ¶ 78.

The Mississippi Consumer Protection Act ("CPA"), codified in Miss. Code Ann. Section 75-24-1, *et seq.*, prohibits, *inter alia*, "[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce . . . ." Section 75-24-5(1).  Section 75-24-25 of the Mississippi CPA (the "state-of-emergency pricing provision") specifically prohibits profiteering on the sales of goods and services within an "emergency impact area" during a declared emergency.  Invoking the private right of action provided for under Section 75-24-15(1) of the CPA, the plaintiffs allege in Count I that the defendants "engaged in unconscionable pricing practices, and unconscionable, deceptive and unfair acts and practices in trade and commerce by implementing unconscionable price increases for motor fuels during [the] State of Emergency [declared as a result of Hurricane Katrina] . . . ."  Complaint ¶ 83.

Counts II and III of the Complaint seek the imposition of a constructive trust and punitive damages as a result of the defendants' alleged wrongful acts.  Specifically,

---

[1]  Several of the original defendants have been voluntarily dismissed by the plaintiffs.  The remaining defendants are those listed in the heading of the case.

Count II alleges that the defendants were unjustly enriched at the expense of the plaintiffs "by implementing unconscionable price increases for motor fuel." Complaint ¶ 96. As a result, the plaintiffs seek damages, as well as the imposition of a constructive trust "on all funds gained as a result of the wrongful acts of the Defendants . . . ." Complaint ¶ 99. In Count III, the plaintiffs seek punitive damages under the averment that the defendants' alleged conduct was "willful, wanton and egregious." Complaint ¶ 101.

The defendants have filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, the defendants contend that the plaintiffs' claims should be dismissed because: (1) the CPA does not provide a private right of action for violations of the state-of-emergency pricing provision; (2) that the plaintiffs have failed to allege the consumer purchases required to constitute a valid claim for violation of the CPA's state-of-emergency pricing provision; (3) that the plaintiffs have failed to pursue an informal dispute settlement program before seeking judicial review, as required under the CPA; (4) that the plaintiffs have not alleged a factual basis under which restitution and/or a constructive trust can be granted; and (5) that neither Mississippi law nor the CPA allows the plaintiffs to seek punitive damages under the alleged facts. The defendants have also moved to strike the plaintiffs' CPA class action claims, citing the CPA's express statutory bar on class action claims under Section 75-14-15(4).

The plaintiffs contest the present motion on all grounds proffered by the defendants, but in the alternative, seek leave to amend the Complaint. However, the defendants contend that amendment should not be allowed and that dismissal should

be granted with prejudice because the plaintiffs cannot remedy the defects in the Complaint and, as such, leave to amend would be futile.

**STANDARD OF REVIEW**

Dismissal pursuant to Rule 12(b)(6) is appropriate if a party fails to state a claim under which relief can be granted.  The allegations contained in the complaint must be accepted as true when the court considers whether the plaintiff has stated a cause of action.  *See Cramer v. Skinner*, 931 F. 2d 1020 (5th Cir. 1991)(*cert. denied*, 502 U.S. 907, 112 S. Ct. 298, 116 L. Ed. 2d 242 (1991)).  Only the complaint and allegations contained therein are to be considered in reaching a decision on a defendants' Rule 12(b)(6) motion to dismiss.  "The Rule 12(b)(6) motion . . . only tests whether the claim has been adequately stated in the complaint."  5A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1356 at 298 (1990).

While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the United States Supreme court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, _____ U.S. _____ , _____ , 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929, 940, 75 USLW 4337, 2007-1 (2007)(other citations omitted).  The Fifth Circuit's standard of review is in accord with *Twombly*:

> "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."  3 Wright & Miller, FEDERAL PRACTICE

AND PROCEDURE: CIVIL 2d § 1216 at 156-159 (footnote omitted).  '[A] statement of facts that merely creates a suspicion that the pleader might have a right of action' is insufficient. *Id*. at 163 (footnote omitted). 'Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . .' 2A MOORE'S FEDERAL PRACTICE P 12.07 [2.-5] at 12-91 (footnote omitted). The court is not required to 'conjure up unpled allegations or construe elaborately arcane scripts to' save a complaint. *Gooley v. Mobil Oil Corp*, 851 F.2d 513, 514 (1st Cir. 1988).  Further, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'  *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).'

*Rios v. City of Del Rio, Tex*., 444 F.3d 417, 420-21 (5th Cir. 2006) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)).

Finally, because the plaintiffs allege that this court has original jurisdiction of this civil action via complete diversity of the parties under 28 U.S.C §1332(a)(1), Mississippi law controls substantive issues.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-80, 58 S.Ct. 817, 82 L.Ed. 1188 (1934); *Huss v. Gayden*, 465 F.3d 201, 205-06 (5th Cir. 2006).

## **ANALYSIS**

### **I.  COUNT I**

#### **A.  Private Right of Action**

In Count I, the plaintiffs seek damages for alleged violations of the state-of-emergency pricing provision of Mississippi's CPA, Miss. Code Ann. § 75-24-25[2].  The

---

[2]  Section 25 provides in part:

Whenever, under the Mississippi Emergency Management Law, Sections 33-15-1 through 33-15-49, a state of emergency or a local emergency is declared to exist in this state, then the value received for all goods and services sold within the designated emergency impact area shall not exceed the prices ordinarily charged for comparable goods or services in the same market area at or immediately before the declaration of a state of emergency or local emergency.

first basis argued for dismissal of Count I by the defendants is that the Mississippi CPA does not provide a private right of action for these alleged violations.  While undoubtedly the CPA provides a private right of action for certain deceptive and unfair trade practices, (*See* § 75-24-15)[3], whether such a private right exists under the state-of-emergency pricing regulations is an issue of first impression in Mississippi.

According to the defendants, § 25 is primarily a criminal statute as subsections (3) and (4) of § 25 authorize specific criminal penalties.  *See* Miss. Code Ann. § 75-24-25(3), (4).  The plaintiffs argue that subsection (6)[4] of § 75-24-25 authorizes private causes of action pursuant to its mandate that violations of the section may also be unfair or deceptive trade practices and governed by the same procedures and remedies as § 5.  However, the defendants argue that subsection (6) does not authorize any private right of action for violations of § 25, but rather that it is expressly limited to the

Miss. Code Ann. § 75-24-25(2).

[3]    The only provision of the CPA authorizing private actions at all is Section 15, which provides in pertinent part:

> [A]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use of [sic] employment by the seller, lessor, manufacturer or producer of a method, act or practice prohibited by Section 75-24-5 may bring an action at law . . . to recover such loss of money or damages for the loss of such property . . . .

§ 75-24-15(1).

[4]    Subsection (6) of Section 25 provides:

> In addition to the criminal penalties prescribed in subsections (3) and (4), any knowing and willful violation of subsection (2) of this section shall be considered an unfair or deceptive trade practice subject to and governed by all the procedures and remedies available under the provisions of this chapter for enforcement of prohibited acts and practices contained therein.

Miss. Code Ann. § 75-24-25(6)

6

procedures and remedies available under other portions of the CPA for "enforcement" of its prohibitions against unfair and deceptive trade practices.

To justify this conclusion, the defendants hinge their argument on the word "enforcement' in subsection (6) of § 25.  They point out that enforcement of the CPA's prohibition against unfair and deceptive trade practices is delegated to the Mississippi Attorney General, as well as to Mississippi district and county attorneys and set forth the various sections of the CPA which detail these enforcement responsibilities.  *See* §§ 75-24-1, 5, 9, 19, 20, 21, 27.  The defendants then go to great lengths to parse the term "enforcement" in an effort to convince the court that the word has some singular legal meaning.  The plaintiffs offer little in rebuttal to the defendants' argument except that "it just ain't so."[5]

In order to determine whether a private right of action exists under a statute, the party claiming the right of action must demonstrate that the legislature intended, expressly or by implication, to impose liability for violations of the statute.  *Doe v. State ex rel. Mississippi Dept of Corrections*, 859 So. 2d 350, 355 (Miss. 2003).  In *Doe*, the Mississippi Supreme Court announced:

> "[A] court must analyze the statute itself and any relevant legislative history. The focal point is the legislative body's intent in enacting the statute. Unless the legislative intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist."

859 So. 2d at 356. (quoting *Hodgson v. Mississippi Dept of Corrections*, 963 F. Supp. 776, 791 (E.D. Wis. 1997)).

---

[5]  This is a paraphrase of the plaintiffs' argument and not a direct quote.  It is, however, equal to the scant effort put forth by the plaintiffs to defend their private right of action.

The Mississippi Supreme Court examines the language and history of a statute in order to determine whether the legislature intended to create a private right of action for violations of prohibitions under the statute.  *See id.*  Furthermore, a court should endeavor to give effect to the entirety of a statute when attempting to discern legislative intent.  *Gilmer v. State*, 955 So. 2d 829, 835 (Miss. 2007)*; see also In re Supreme Beef Processors*, *Inc.*, 468 F.3d 248, 253 (5th Cir. 2006) ("[I]t is a 'cardinal rule that a statute is to be read as a whole,' in order not to render portions of it inconsistent or devoid of meaning.") (quoting *Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler,* 537 U.S. 371, 385 n.7, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003)).  Moreover, it is a longstanding judicial duty to construe statutes in a way that avoids absurd results and preserves usefulness.  *State v. Edward Hines Lumber Co.*, 150 Miss. 1, 60, 115 So.598 (Miss. 1928); *Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 333, 59 S.Ct. 191, 83 L.Ed. 195 (1938).

When read as a whole, the plain meaning of the CPA does not appear to provide private recourse for violations of the state-of-emergency pricing provision.  Section 75-24-25(2) prohibits profiteering on the sales of goods and services within an "emergency impact area" during a declared emergency.  Correlatively, § 75-24-25(6) provides that "any knowing and willful violation of [§ 75-24-25(2)] shall be considered an unfair or deceptive trade practice subject to and governed by all the procedures and remedies available under the provisions of this chapter for enforcement of prohibited acts and practices contained therein."  The sole "procedure[] and remed[y] available under the provisions of [§ 75-24]," § 75-24-25(6), amenable to private action is defined in § 75-24-

8

15(1):

> [A]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property . . . as a result of the use of [sic] employment by the seller, lessor, manufacturer or producer of a method, act or practice prohibited by Section 75-24-5 may bring an action at law . . . to recover such loss of money or damages . . . .

While the plaintiffs' conclusory argument is that this language creates the predicate right of action necessary for private individuals to recover for violations of the state-of-emergency pricing provisions, this court must read § 75-24-15(1) in the context of the entire CPA. *See Gilmer*, 955 So. 2d at 835; *In re Supreme Beef Processors*, 468 F.3d at 253. A reading of the Mississippi CPA as a whole reveals the plaintiffs' conclusion to be oversimplified and likely erroneous.

As the defendants correctly point out, § 75-24-15(1) expressly limits private actions under the CPA to redress for violations of prohibitions defined in § 75-24-5, with no mention of the state-of-emergency pricing provision defined in § 75-24-25(2). Section 75-24-5 defines the "[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce" which are prohibited under the CPA. Because the express prohibition on unfair or deceptive trade practices delineated in § 75-24-5(1) mirrors the language of § 75-24-25(6), it is clear that § 75-24-5(1) encompasses the CPA's state-of-emergency pricing provision. However, Section 75-24-5(1) prohibitions are expressly limited to actions brought by the Attorney General as enabled under § 75-24-9. Because § 75-24-5(2) contains no such limitation, private individuals may only invoke the right of action created by Section 75-24-15(1) to seek recourse for the unfair practices enumerated in § 75-24-5(2). But, the state-of-

emergency pricing provision outlined in § 75-24-25(2) is neither included nor fairly read into any of the specific types of prohibited practices enumerated under § 75-24-5(2). Therefore, the Mississippi CPA appears on its face to preclude private actions with respect to the state-of-emergency pricing provision.

While the plain meaning of the Mississippi CPA does not appear to provide a private right of action for the state-of-emergency pricing provision, the pertinent legislative history suggests that this interpretation may be incorrect, however.  Prior to 1994, § 75-24-5 did not contain the language currently codified in § 75-24-5(1).  Thus, the only prohibitions amenable to action by either private individuals (under § 75-24-15(1)) or the Attorney General (under § 75-24-9) were those specific types of unfair practices currently enumerated in § 75-24-5(2).  See § 75-24-5 (1993) (current version at § 75-24-5(2) (2007)).  However, the pre-1994 iterations of §§ 75-24-9, 75-24-15 and 75-24-25 all mirror, in pertinent part, the corresponding versions of these sections currently in force.  *See* § 75-24-9 (1993) (current version at § 75-24-9 (2007)); § 75-24-15(1) (1993) (current version at § 75-24-15(1) (2007)); § 75-24-25(2) (1993) (current version at § 75-24-25 (2) (2007)); § 75-24-25(4) (1993) (current version at §75-24-25(6) (2007)).

As a result, from the time of its passage in 1986 until 1994, the method for prosecuting violations of the state-of-emergency pricing provision defined under § 75-24-25 was as one of the unfair practices enumerated in § 75-24-5 (current version at Section 75-24-5(2) (2007)) which encompassed the state-of-emergency pricing provision.  Therefore, both the Attorney General and private individuals would have been able to bring actions for violations of the state-of-emergency pricing provision by

10

way of § 75-24-5.  *See* § 75-24-9 (1993) (current version at § 75-24-9 (2007)) (enabling the Attorney General to bring actions against violators of the § 75-24-5 enumerated prohibitions); § 75-24-15(1) (1993) (current version at § 75-24-15(1) (2007)) (enabling private rights of action against violators of the § 75-24-5 enumerated prohibitions). Thus, it appears that the 1986 legislature intended to create a private right of action with respect to the Mississippi CPA's state-of-emergency pricing provision.

Interpreting the 1986-1993 iterations of the Mississippi CPA to provide for private prosecution of the state-of-emergency pricing provision suggests that the current CPA similarly provides for private actions.  A contrary interpretation of the 1986-1993 versions would lead to the absurd result that the 1986 legislature created the state-of-emergency pricing provision with no corresponding right of action.  However, it is a judicial duty to avoid an interpretation that leads to such an absurd result.  *See State v. Edward Hines Lumber Co.*, 150 Miss. at 60; *Armstrong Paint*, 305 U.S. at 333.

The statutory language creating the private right of action (under § 75-24-15), enabling the Attorney General's right of action (under § 75-24-9) and prescribing the procedure for remedying violations of the state-of-emergency pricing provision (under § 75-24-25) remain in force as they were prior to the 1994 amendment of § 75-24-5. However, the 1994 amendment of § 75-24-5 converted the previous version into subsection (2) and added the following general prohibition as subsection (1):  "Unfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce are prohibited.  Action may be brought under [this section] only under the provisions of § 75-24-9 [enabling action by the Attorney General]."  Thus, the re-enactment of the prior version of § 75-24-5 in subsection (2), in combination with the

re-enactment of the pertinent parts of §§ 75-24-9, 75-24-15 and 75-24-25, suggests that the private right of action assumed to exist in 1986 was unchanged by the addition of § 75-24-5(1).[6]

Therefore, the plain meaning of the current Mississippi CPA as now codified seems to be contradictory to the 1986-1993 iterations of that statute.  The plain meaning of the current CPA appears to preclude private rights of action with respect to the state-of-emergency pricing provision.  In contrast, the 1986-1993 iterations of the CPA appear to provide for private prosecution of violations of the state-of-emergency pricing provision.  Furthermore, the amendments to the CPA after 1993 do not belie a legislative intent to remove an existing private right of action.  While this inconsistency may be the result of inartful drafting, it is certain that a review of the plain meaning of the statutory language and the legislative history of the Mississippi CPA neither endorses nor precludes private action for violations of the state-of-emergency pricing provision.  *See Doe*, 859 So. 2d at 355.

The law of other jurisdictions provides some authority for finding that the Mississippi CPA state-of-emergency pricing provision does not contemplate private actions.  Under Mississippi law, "'a court must analyze the statute itself and any relevant legislative history'" in order to determine whether a statute creates a private

---

[6]   It should be noted that both the 1986-1993 and post-1993 iterations of § 75-24-25 limit the prosecution of violations of the state-of-emergency pricing provision to "enforcement" actions.  *See* § 75-24-25(4) (1993); § 75-24-25(6) (2007).  The defendants suggest the term "enforcement" reflects legislative intent to limit prosecution of violations of § 75-24-25 to government actions. This interpretation provides a basis for reconciling the 1986-1993 and post-1993 iterations of § 75-24-25.  Specifically, if the term "enforcement" limited § 75-24-25 to government action, no private right of action would have existed prior to the 1994 amendment of § 75-24-5.  Thus, any sign of legislative intent to preclude private action under § 75-24-25 via the 1994 Amendment of § 75-24-5 would have been unnecessary.  However, because the defendants' argument (i.e. that private actions are precluded under § 75-24-25 by use of the term "enforcement") is unpersuasive, this conclusion is tenuous.

right of action.  *Doe*, 859 So. 2d at 355 (quoting *Hodgson*, 963 F. Supp. at 791).  The

*Doe* court looked to the interpretations of other state's statutes by other courts.  *Id.*

(reviewing *inter alia* the Alabama Supreme Court's construction of Ala. Code 1975, §

40-12-222, an unrelated Alabama tax statute).  As a result, the *Doe* court determined

that the absence of indicia of legislative intent to create a private right of action

established that the plaintiff had no right of action under the Uniform Act for Out-of-

State Parolee Supervision.  *Id.*

A review of the Consumer Protection Acts of other states reveals that private

rights of action for violations of state-of-emergency pricing provisions are generally

approved or precluded through explicit language.  *See* Fla. Stat. § 501.160(7) (2007)

("[N]othing in this section creates a private cause of action in favor of any person

damaged by a violation of this section."); Code of Ala. §§ 8-31-3 (2007), 8-31-6 (2007)

("Nothing in this chapter creates a private cause of action in favor of any person

damaged by a violation of this chapter."); Idaho Code Ann. § 48-603 (2007) ("[N]o

private cause of action exists under this subsection.); *see also* Tex. Bus. & Com. Code

§§ 17.46(b)(27) (2007), 17.50(a) (2007) ("A consumer may maintain an action [for]. . .

(1) the use or employment by any person of a . . . deceptive act or practice that is: (A)

specifically enumerated in a subdivision of Subsection (b) of Section 17.46 . . . ."); Kan.

Stat. Ann. §§ 50-6, 106 (2007), 50-634(b) (2007) ("A consumer who is aggrieved by a

violation of this act may recover . . . damages . . . .").  Thus, it would be consistent with

the practices of other states to interpret the Mississippi CPA according to its plain

meaning which appears to preclude a private right of action for enforcement of the

state-of-emergency pricing provision.  However, this conclusion is complicated by the contradictory legislative history and somewhat ambiguous language of the CPA.

It is also revealing that the only case law regarding the prosecution of violators of a state-of-emergency pricing provision all involve suits brought by an Attorney General. *See, e.g. People v. Two Wheel Corp.*, 525 N.E.2d 692 (N.Y. 1988); *People ex rel. Spitzer v. Dame*, 289 A.D.2d 997, 734 N.Y.S.2d 789 (N.Y. App. Div. 2001); *People ex rel. Apitzer v. Wever Petroleum, Inc.*, 14 Misc.3rd 491, 827 N.Y.S.2d 813 (N.Y. Sup. Ct. 2007); *People by Vacco  v. Chazy Hardware, inc.*, 176 Misc.2d 960, 675 N.Y.S.2d 770 ((N.Y. Sup. Ct. 1998); *State v. Strong Oil Co. Inc.*, 105 Misc.2d 803, 433 N.Y.S.2d 345 (N.Y. Sup. Ct. 1980).  Furthermore, like the Mississippi CPA, the pertinent New York consumer protection statutes do not expressly endorse or preclude private actions with respect to these provisions.  *See* N.Y. Gen. Bus. Law § 396-r(2),(4) (2007) (creating a right of action for prosecution of "unconscionable or excessive price[s]" during "abnormal disruptions of the market," without expressly precluding private actions); N.Y. Gen. Bus. Law § 349(a), (h) (2007) (creating a private right of action for deceptive commercial practices generally).  Despite the fact that Section 349 could be construed as providing for private actions regarding unfair state-of-emergency pricing, all actions for such prohibited acts have been prosecuted by the Attorney General under Section 396-r.  Thus, it would not be inconsistent with the only case law on point to interpret the Mississippi CPA's state-of-emergency pricing provision as precluding private actions.

The defendants stress that the term "enforcement" has been interpreted in other statutes to refer to actions brought by the government, as opposed to actions by private

14

individuals to recover money damages.  While there is some authority for this proposition, the cases cited by the defendants in support are particularly weak and easily distinguishable from the instant dispute.  *See Key Tronic Corp. v. U.S.,* 511 U.S. 809, 815-819, 114 S.Ct. 1960, 128 L.Ed.2d (1994); *Stang v. Clifton Gunderson Health Care Plan,* 71 F.Supp.2d 926, 933  (W.D. Wis. 1999).  For example, in *Stang*, the United States District Court for the Western District of Wisconsin noted that the finding that "enforcement actions" did not encompass actions by private individuals was a particularly "close call," dependent largely upon legislative history specific to ERISA.  71 F. Supp.2d at 932.  Further, the United States Supreme Court holding in *Key Tronic* that attorney's fees were not encompassed by the term "enforcement activities" was highly specific to the use of this terminology in an environmental statute that nonetheless authorized private actions.  *See Key Tronic*, 511 U.S. at 815-819.

Section 75-24-25(6) provides that "any knowing and willful violation of [§ 75-24-25(2)] shall be considered an unfair or deceptive trade practice subject to and governed by all the procedures and remedies available under the provisions of this chapter for enforcement of prohibited acts and practices contained therein."  Thus, § 75-24-25(6) limits the prosecution of § 75-24-25(2) to "enforcement" actions.  According to the defendants, *Stang* and *Key Tronic* dictate that "enforcement" actions are those brought by the government to enforce statutory prohibitions, and not private actions for compensation.  Thus, the defendants assert that the Mississippi CPA's state-of-emergency pricing provision can only be enforced by the Attorney General under § 75-24-5(1) by way of § 75-24-9.  But, as discussed above, interpretations of the term

15

"enforcement" in *Stang*, 71 F. Supp 2d at 933, and *Key Tronic*, 511 U.S. at 815-19, were highly specific to unrelated statutes and their correlative legislative histories. As a result, any finding based upon these authorities would necessarily depend on indicia of legislative intent found in the statutory language or history of the CPA.

However, because the plain meaning of the statutory language currently in force conflicts with a fair reading of the legislative history of the CPA, the legislative intent upon which *Stang* and *Key Tronic* relied are absent from the Mississippi CPA. Thus, the defendants' suggested interpretation of "enforcement" in § 75-24-25(6) is a particularly weak reed upon which to rest a finding that private actions are precluded for violations of the CPA's state-of-emergency pricing provision.

After a careful review of the statutory language and legislative history of the Mississippi CPA, the court concludes that it is susceptible of contradictory interpretations. The statutory language indicates the unavailability of a private right of action on its face. Further, a review of similar provisions from other states as well as construction of the term "enforcement" by other courts suggests that it may be likely that the Mississippi legislature did not intend to provide a private right of action for violations of the CPA's state-of-emergency pricing provision. Finally, while it is questionable whether Mississippi law requires the plaintiffs to establish legislative intent in the instant case, the plaintiffs have unquestionably failed to do so.

Nevertheless, none of the arguments advanced by the defendants, regardless of the lack of effort by the plaintiffs to defend their claims, convince the court that there is not a private right of action for the state-of-emergency pricing provision of Mississippi's CPA. However, it is not necessary for the court to decide this contested issue of first

16

impression.  The plaintiffs' Complaint suffers from other fatal maladies which unquestionably prevent its continued viability.

### B. Plaintiffs' Failure to Allege a "Purchase"

Assuming for the sake of argument that the plaintiffs have a private right of action for enforcement of violations of the state-of-emergency pricing provision of Mississippi's CPA, the next hurdle presented is the defendants' assertion that the plaintiffs have failed to allege a "purchase" of goods or services from any of the defendants.  Both Sections 75-24-15 and 75-24-25 require such an allegation, and none is present in the Complaint.  The plain language of Section 25 makes clear that a purchase is a necessary prerequisite for an alleged violation:

> Whenever . . . a state of emergency or a local emergency is declared to exist in this state, then the value received for all goods and services sold within the designated emergency impact area shall not exceed the prices ordinarily charged for comparable goods or services in the same market area at or immediately before the declaration of a state of emergency or local emergency.

§ 75-24-25(2).  Subsection (1) of Section 25 defines "value received" as "the consideration or payment given for the purchase of goods and services."  § 75-24-25(1)(e).  Further, under the language above, the CPA's state-of-emergency pricing provision is violated when the "value received" for a good or service "sold within [a] designated emergency impact area" exceeds "the prices ordinarily charged for comparable goods or services in the same market area." § 75-24-25(2).

This "purchase" requirement is also present in the CPA's private action provision as well.  That provision states as follows:

> [A]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use of [sic] employment by the seller, lessor, manufacturer or producer of a method, act or practice prohibited by [§ 75-24-5] may bring an action at law . . . to recover such loss of money or damages for the loss of such property . . . .

§ 75-24-15(1).  Thus, a private right of action exists under the CPA only if one establishes a "purchase[] or lease" of goods or services "primarily for personal, family or household purposes."  *Id.*

The plaintiffs ignore this essential requirement of Sections 25 and 15.  The plaintiffs simply state that each plaintiff is an "adult resident citizen" of a particular Mississippi county.  Complaint ¶¶ 7– 45.  The Complaint nowhere alleges that any named plaintiff bought gasoline from any defendant.  Indeed, the Complaint makes no allegation that any named plaintiff purchased any gasoline during Mississippi's state of emergency—much less whether they purchased gasoline in a designated emergency impact area, what price they paid, how much gasoline they purchased, where they purchased it, or what prices were "ordinarily charged" for gasoline in the given "market areas."

The plaintiffs do not deny that a necessary element under the CPA's state-of-emergency pricing provision is that they each must have purchased gasoline from the defendants.  Rather, the plaintiffs point to two Paragraphs of their Complaint, Paragraphs 6 and 78, and contend that those Paragraphs' allegations satisfy the pleading standards articulated by the U.S. Supreme Court in *Twombly*, *supra*.  But as stated above, neither Paragraph alleges any gasoline purchase by any named plaintiff from any defendant.  Moreover, Paragraphs 6 and 78 are precisely the type of

18

complaint allegations that *Twombly*—and *Campbell*, as discussed above—condemn. *See Twombly*, 127 S. Ct. at 1959 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ."); *Campbell*, 43 F.3d at 975 ("Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief.").

Furthermore, regardless of the plaintiffs' assertion that they should be allowed to amend their Complaint to allege such purchases, as to many defendants, the plaintiffs' failure to allege a purchase is incurable.  This is so because under the CPA's private action provision, a claim may only be asserted against a "seller, lessor, manufacturer or producer" who "use[d]" a "method, act or practice" prohibited by the CPA, e.g., violating the CPA's state-of-emergency pricing provision.  § 75-24-15(1).  Many of the defendants in this action—BP Products North America Inc., Chevron U.S.A. Inc., Citgo Petroleum Corporation and Shell Oil Products Company—do not sell gasoline directly to Mississippi consumers.  Thus, the plaintiffs will never be able to plead that these defendants violated the CPA's state-of-emergency pricing provision.  To the extent that the plaintiffs could amend to properly assert purchases against the other defendants, such would be appropriate to prevent dismissal, except for the other fatal flaws in the Complaint discussed elsewhere.

### C. <u>Plaintiffs' Failure to Attempt Informal Pre-suit Resolution</u>

The defendants strongest argument for the dismissal of Count I is that in addition to its "purchase" requirement, the CPA section authorizing private rights of action

contains the prerequisite that the plaintiffs attempt to resolve their CPA claims through the auspices of the Attorney General's office prior to filing suit, which the plaintiffs did not do.  Pursuant to subsection (2) of Section 15, "[i]n any private action brought under this chapter, the plaintiff must have first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General."  The Complaint alleges no attempt by any of the plaintiffs to resolve their CPA claims through such a program which admittedly exists.  In fact, the plaintiffs admit that they did not try to resolve their claims through an informal dispute settlement program approved by Mississippi's Attorney General before filing their Complaint.

Instead, the plaintiffs suggest that the CPA's requirement concerning informal dispute resolution is "unreasonable" with respect to their claims, notwithstanding the presence of a program offered by the Attorney General's office.  The plaintiffs contend that enforcement of the requirement would swamp the Attorney General's mediation program with claims from every class member.  The defendants argue that the plaintiffs are simply thirty-nine named plaintiffs and that thirty-nine named plaintiffs obviously could seek to use the mediation program.   Furthermore, the defendants contend that the plaintiffs' claim that the informal dispute resolution requirement is unreasonable because of their proposed class is disingenuous, given that the CPA explicitly bars class claims.

The Court of Appeals of Mississippi recently enforced this requirement to dismiss a private action against an insurance provider for alleged violations of the Mississippi CPA.  *See Taylor v. Southern Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1049 (Miss. App. 2007).  The *Taylor* court noted the plaintiff's failure to allege any attempt to satisfy

20

the informal dispute settlement requirement of Section 75-24-15(2) as alternative grounds for affirming dismissal of the CPA claim for failure to state a claim upon which relief can be granted.  *Id.*  Additionally, the United States District Court for the District of Massachusetts refused to include Mississippi consumers alleging violations of the Mississippi CPA in a proposed nationwide consumer class action for, *inter alia*, failure to allege compliance with Section 75-24-15(2).  *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 230 F.R.D. 61, 84-85 (D. Mass. 2005).

In the absence of alleging compliance with the dispute resolution requirement, the plaintiffs essentially contend that the only reasonable attempt to resolve their claims through an informal dispute settlement program is no attempt at all.  This argument is fatally flawed for two reasons.  First, Section 75-24-15(2) does not require that the plaintiffs attempt to resolve their claims through the Attorney General's Office of Dispute Resolution or even that the Attorney General administer the informal dispute settlement program.  Rather, Section 75-24-15(2) requires only that the plaintiffs attempt to resolve their claims through a program approved by the Attorney General.  Second, because class actions are barred under Section 75-24-15(4) of the Mississippi CPA (as will be discussed *infra)*, the parties who must attempt to resolve their claims according to the requirements of Section 75-24-15(2) consists of only the thirty-nine named plaintiffs.

Thus, the plaintiffs have failed to establish that pursuing their Mississippi CPA claims through an informal dispute settlement program approved by the Attorney General would place such a strain upon the state's resources as to prove *per se* unreasonable.  Accordingly, the court finds that the plaintiffs have failed to make a

reasonable attempt to resolve their Mississippi CPA claims through an informal dispute settlement program as required under Section 75-24-15(2) and this failure is fatal to Count I of the Complaint.

## II. <u>THE MISSISSIPPI CPA EXPRESSLY BARS CLASS ACTIONS</u>

The defendants next contend that the plaintiffs' Complaint also runs counter to another limitation on private actions under the CPA, i.e., that class actions are not allowed.  The CPA provision authorizing certain private rights of action states as follows:

> Nothing in [the CPA] shall be construed to permit any class action or suit, but every private action must be maintained in the name of and for the sole use and benefit of the individual person.

Miss. Code Ann. § 75-24-15(4).

In a diversity action, this court is bound by the *Erie* doctrine to apply state substantive law and federal procedure.  *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)); *see also DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 427 (5th Cir. 2003).  The plaintiffs disingenuously assert that the availability of class action status is a procedural matter, governed by federal law under the *Erie* doctrine.  As such, the plaintiffs argue that Fed. R. Civ. P. 23 displaces Section 75-24-15(4), thereby providing the federal basis to pursue the class action claim in the instant diversity action.  However, because Section 75-24-15(4) is a substantive rather than procedural rule, it must be applied under the *Erie* doctrine to bar the plaintiffs'

22

class action claim as discussed below.

Erie, supra, and Hanna v. Plumer, 380 U.S. 460, 471-72, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), developed a two-part test for determining what law a federal court sitting in diversity should apply when state law potentially conflicts with a Federal Rule of Civil Procedure. The court must first determine whether there is a "direct collision" between the federal rule and state law.  If no "direct collision" exists, the court must decide whether the state law is substantive or procedural by considering that the aim of Erie is the discouragement of forum-shopping and avoidance of inequitable administration of the laws as discussed below.

In the event of a potential conflict between a Federal Rule of Civil Procedure and state law, a court must determine whether "the scope of [the] Federal Rule . . . is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of [the state] law." Burlington Northern R. Co. v. Woods, 480 U.S. 1, 4-5, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987) (quoting and citing Walker v. Armco Steel Corp., 446 U.S. 740, 749-750 & n. 9, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980); Hanna, 380 U.S. at 471-72; see also Exxon Corp. v. Burglin, 42 F.3d 948, 950 n.3 (5th Cir. 1995); Leider v. Ralfe, 387 F. Supp. 2d 283, 290 (S.D.N.Y. 2005).

The Leider court addressed whether Fed. R. Civ. P. 23 was sufficiently broad to "directly collide" with New York law prohibiting class actions for violations of a state anti-trust law.  387 F. Supp. 2d at 290-291.[7]  Leider held that the federal rule and state law

---

[7]   Specifically, New York Civil Practice Law and Rules Law § 901(b) (2007) states that "[u]nless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery

did not "directly collide" because "'Rule 23 . . . governs the manner of determining whether class certification is appropriate in federal courts [whereas] Section 901(b) establishes a bar to certain claims being considered for class action treatment on a threshold level.'" *Id.* at 290. (quoting *United States v. Dentsply Intern., Inc.*, Nos. Civ. A. 99-005-SLR, 99-255-SLR, 99-854-SLR, 2001 U.S. Dist. LEXIS 9057, at *52 (D. Del. 2001) *rev'd on other grounds, U.S. v. Dentsply Intern., Inc.*, 399 F.3d 181 (3rd Cir. 2005)).

Section 75-24-15(4) does not "directly collide" with Fed. R. Civ. P. 23. Section 75-24-15(4) of the Mississippi CPA provides "[n]othing in [the CPA] shall be construed to permit any class action or suit, but every private action must be maintained in the name of and for the sole use and benefit of the individual person." Although *Leider* is not controlling, the analysis is identical. As in *Leider*, Section 75-24-15(4) prohibits class actions for violations of the Mississippi CPA's state-of-emergency pricing provision on a threshold level. *See id.* In contrast, as noted by the defendants, Fed. R. Civ. P. 23 governs the procedure for pursuing available class actions in federal courts. Thus, the Mississippi CPA's class action bar does not "directly collide" with Fed. R. Civ. P. 23.

Once the court determines that a state law does not "directly collide" with the Federal Rules, the state law must be applied if that law is "substantive" and not "procedural." In order to determine whether a state law is substantive, a court must examine the law in light of the goals of the *Erie* doctrine: "discouragement of forum-

---

created or imposed by statute may not be maintained as a class action." The Donnelly Act, the state anti-trust law under which the consumer plaintiffs asserted the class action claim, created a penalty without authorizing recovery via class actions. *See* N.Y. General Business Law § 340 *et seq.*

shopping and avoidance of inequitable administration of the laws."  *Hanna*, 380 U.S. at

468; *see also Leider*, 387 F. Supp. 2d at 291-92.  As Justice Frankfurter wrote in the

defining days shortly after the *Erie* decision,

> [S]ince a federal court adjudicating a state-created right solely because of
> diversity of citizenship of the parties is for that purpose, in effect, only
> another court of the State, it cannot afford recovery if the right to recover
> is made unavailable by the State nor can it substantially affect the
> enforcement of the right as given by the State.

*Guaranty Trust Co. Of N.Y. v. York*, 326 U.S. 99, 108-109, 65 S.Ct. 1464, 89 L.Ed.

2079 (1945); *see also, Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93

L.Ed. 1524 (1949).

Where, as here, the state rule at issue is limited to a particular substantive

area of law, the case is especially strong for applying the state rule.  In the instant case,

the class-action bar set forth in subsection (4) of Section 15 of the CPA is limited to the

discrete substantive area of Mississippi's consumer-protection law.  As a sister Circuit,

the Seventh, has explained, one class of "pretty easy cases" in which a state rule is

substantive and ought to be applied by federal courts sitting in diversity is where the

state rule "is limited to a particular substantive area, such as contract law."  *S.A. Healy

Co. v. Milwaukee Metropolitan Sewerage Dist.*, 60 F.3d 305, 310 (7th Cir.1995).  In such

cases, "the state's intention to influence substantive outcomes is manifest and would be

defeated by allowing parties to shift their litigation into federal court unless the state's

rule was applied there as well."  *Id.*  Absent application of the state rule in federal court,

"parties having access to a federal district court under . . . diversity jurisdiction could

thumb their noses" at the state's substantive policy choices.  *Id.*

The court concludes that Section 75-24-15(4) is a substantive state law under the *Erie* doctrine because application of its class action bar to the instant dispute accomplishes the goals of the *Erie* doctrine and is limited to a particular substantive area of the law - consumer protection.  As noted in *Hanna*, the *Erie* doctrine is intended to discourage forum-shopping and avoid inequitable application of laws between state and federal courts.  380 U.S. at 468.  Certainly, finding Fed. R. Civ. P. 23 to pre-empt the Section 75-24-15(4) class action bar would encourage putative class action plaintiffs in Mississippi to seek out federal jurisdiction "in order to obtain the 'substantial advantages' of class actions."  *Leider*, 387 F. Supp. 2d at 291 (quoting *In re Relafen Antitrust Litigation*, 221 F.R.D. 260, 285 (D. Mass. 2004)).  Furthermore, it would be an inequitable application of Mississippi law to allow class actions under the Mississippi CPA in federal court while barring them in Mississippi state courts.  As such, the CPA's class action bar is substantive under the guidelines of the *Erie* doctrine and must be applied to bar the plaintiffs' class action claim.

Finally, another federal court sitting in diversity has refused to permit class actions for alleged violations of the Mississippi CPA because Section 75-24-15(4) expressly bars class action suits.  Specifically, the United States District Court for the District of Massachusetts excluded Mississippi plaintiffs from a putative nationwide class action for violations of state consumer protection acts because "[u]nder the laws of . . . Mississippi, . . . there is no right to bring a class action to enforce the [CPA]."  *Pharm. Indus.*, 230 F.R.D. at 84; *see also In re New Motor Vehicles Canadian Export Antitrust Litigation*, 241 F.R.D. 77 (D. Me. 2007) (noting that Section 75-24-15(4)

prohibits class actions for violations of the Mississippi CPA, while certifying a class of Mississippi consumers under Mississippi state antitrust law because it contained no such statutory prohibition).  While these decisions are not controlling, they are persuasive authority for the application of the class action bar found in Section 75-24-15(4) in a federal venue.

Therefore, the court finds that the Mississippi CPA's class action bar should be applied to the plaintiffs' class action claims because, under the *Erie* doctrine, Section 75-24-25(4) is a substantive state law which does not "directly collide" with Fed. R. Civ. P. 23.  Furthermore, application of the CPA's class action bar in the instant case would be consistent with the decisions of other federal district courts which have addressed the issue.  Thus, the defendants' Motion to Strike the plaintiffs' class action claims, in the event the Complaint survived the other fatal flaws, would be granted.  The court addresses this issue only because the plaintiffs have alleged the impossibility of resolving their claims through the informal resolution procedures mandated by the Mississippi CPA.  The application of the class action bar simply illustrates the rather uncomplicated task of submitting various thirty-nine individual claims to appropriate informal resolution processes and venues.


### III.  <u>COUNT II - UNJUST ENRICHMENT/CONSTRUCTIVE TRUST</u>

Count II of the Complaint, labeled "Unjust Enrichment/Constructive Trust," asserts that the defendants' "price gouging" has "unjustly enriched" the defendants at the plaintiffs' expense.  Complaint ¶¶ 95–97.  The plaintiffs have requested imposition of a constructive trust on the "gain of funds to which Plaintiffs are rightfully entitled" as a

result of the defendants' alleged violations of the CPA's state-of-emergency pricing provision. *Id.* ¶¶ 98–99.  The court is not certain whether the plaintiffs intend in Count II to seek imposition of a constructive trust, to assert a claim for unjust enrichment as a separate cause of action, or both.  Regardless, the defendants argue that the court should dismiss Count II because it fails to state a claim as a matter of law.

Under Mississippi law, unjust enrichment is not an independent theory of recovery.  *Coleman v. Conseco, Inc.*, 238 F. Supp. 2d 804, 813 (S.D. Miss. 2002)(*partially abrogated on other grounds Sweeney v. Sherwin Williams Co.,* 304 F.Supp.2d 868 (S.D. Miss. 2004)); *see also Estate of Johnson v. Adkins*, 513 So. 2d 922, 926 (Miss. 1987) (discussing the doctrine of unjust enrichment as a measure of damages as opposed to an independent theory of recovery).  Furthermore, in order to impose a constructive trust under Mississippi law, a court must find abuse of a confidential relationship resulting in unjust enrichment.  *McNeil v. Hester*, 753 So. 2d 1057, 1064 (Miss. 2000).

According to the Mississippi Supreme Court,

'A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.'

*Union National Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1179 n.1 (Miss. 2004) (quoting *Saulsberry v. Saulsberry*, 223 Miss. 684, 690, 78 So.2d 758 (Miss. 1955)).

Thus, in order to impose a constructive trust under Mississippi law, a court must

find abuse of a confidential relationship resulting in unjust enrichment.  *See McNeil*, 753 So. 2d at 1064; *see also Russell v. Douglas*, 243 Miss. 497, 506, 138 So.2d 730 (Miss. 1962) (quoting *Sinclair v. Purdy*, 235 N.Y. 245, 139 N.E. 255, 258 (N.Y. 1923), "[i]t is . . . . unjust enrichment under cover of the relation of confidence, which puts the court in motion." (Cardozo, J.)); *McCarthy v. Smith*, CIVIL ACTION NO. 2:05cv2063-DCB-JMR, 2006 U.S. Dist. LEXIS 47022, at *8 (S.D. Miss. June 30, 2006).  While "[a]ny transaction may provide an appropriate setting for creating a constructive trust," *Alvarez [v. Coleman*, 642 So.2d 361,367 (Miss. 1994)], "[a] confidential relationship is a necessary element," *Braddock Law Firm, PLLC v. Becnel*, 949 So. 2d 38, 48 (Miss. App. 2006).  Despite acknowledging that the defendant was unjustly enriched at the expense of the plaintiff, the *Braddock* court held that the plaintiff's failure to allege a confidential relationship was fatal to its request for a constructive trust.  *See id.*  Rather, the *Braddock* court noted that "the only relationship between the two [was] a chain of contracts."  *Id.*

Here, the plaintiffs cannot sustain a claim for a constructive trust because they have neither alleged a confidential relationship nor the facts necessary to show the defendants were unjustly enriched at the expense of the plaintiffs as discussed below.  As in *Braddock*, nothing in the plaintiffs' allegations suggests the existence of a confidential relationship with the defendants.  *Id.*  Indeed, the Complaint cannot even be construed to allege that the plaintiffs purchased gasoline from the defendants.  See discussion *supra*.  Thus, the plaintiffs' failure to allege the requisite confidential relationship is fatal to their claim for a constructive trust.  *Id.*

The defendants argue that the plaintiffs' unjust enrichment claim should be dismissed for failure to allege facts necessary to recover under Mississippi law.  The Mississippi Supreme Court has stated:

> [t]o collect under an unjust enrichment or quasi-contract theory, the claimant must show 'there is no legal contract but . . . the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to [the claimant] . . . to whom in good conscience it ought to belong.'

*Franklin v. Franklin ex rel. Phillips*, 858 So.2d 110, 121 (Miss. 2003) (internal citations omitted)).[8]  Other courts have read Mississippi's statement of the law closely in concluding that unjust enrichment is not an independent theory of recovery.  *Coleman*, 238 F. Supp. 2d at 813.  Rather, unjust enrichment describes "'an effect:  the result of a failure to make restitution under circumstances where it is equitable to do so.'"  *Id.* (quoting 66 Am. Jur. 2d Restitution and Implied Contracts § 9 (2002)).  As such, a claim for unjust enrichment depends upon a showing of some legally cognizable wrong by which a defendant has been unjustly enriched at the expense of the plaintiff.  *See Adkins*, 513 So. 2d at 926 (discussing the doctrine of unjust enrichment as a measure of damages as opposed to an independent theory of recovery).

Here, the plaintiffs' unjust enrichment claim fails to allege a legally cognizable predicate claim by which the defendants were unjustly enriched.  As in *Coleman*, "Plaintiffs have cited no case law establishing 'unjust enrichment' as an independent

---

[8]   Closely related is the rule that "one receiving money paid to him by mistake should not be allowed to enrich himself at the expense of the party who paid the money to him by retaining it, but in equity and good conscience [he] should refund it."  *Milliken & Michaels, Inc. v. Fred Netterville Lumber Co.*, 676 So. 2d 266, 269 (Miss. 1996).  However, this rule is inapposite because the Complaint contains no allegations that the plaintiffs mistakenly paid money to the defendants.  Rather, although legally insufficient, the Complaint is more fairly construed to allege that the plaintiffs knowingly purchased gasoline from the defendants at unconscionable prices.  See Complaint ¶¶ 78, 85, 96.

compensable tort, and the Court is aware of none." 238 F. Supp. 2d at 813.  As noted above, the plaintiffs' claims that the defendants violated the Mississippi CPA's state-of-emergency pricing provision must be dismissed for failure to satisfy the CPA's prerequisites to seeking judicial review.  See discussion *supra*.  Thus, as a matter of law, Count I cannot serve as a basis for concluding that the defendants are "'in possession of money or property which in good conscience and justice he should not retain but should deliver to [the plaintiffs] . . . to whom in good conscience it ought to belong.'" *Franklin*, 858 So.2d at 121 (internal citations omitted).

Likewise, as a matter of law, Count II cannot serve as a basis for concluding that the defendants were unjustly enriched at the expense of the plaintiffs.  Count II alleges in a conclusory fashion that the defendants were unjustly enriched at the expense of the plaintiffs and the putative class as a result of the defendants' "unconscionable pricing practices ('price gouging') and unconscionable, deceptive and unfair acts [and] practices in trade and commerce by implementing unconscionable price increases for motor fuel . . . ."  Complaint ¶ 96.  Whereas it is fairly evident that the plaintiffs have confused Count II as a cause of action independent from Count I, it is more accurate to construe Count II as a measure of damages dependent upon the viability of Count I. Nonetheless, analysis of Count II as an independent cause of action is equally unavailing because it is wholly unsupported by "'direct allegations on every material point necessary to sustain a recovery [or] . . . from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" *Rios*, 444 F.3d at 420-21 (quoting *Campbell,* 43 F.3d at 975); *Aikens v. CIT Group/Sales Financing, Inc.*, Civil Action No. 2:06CV164KS-MTP, 2007 WL 108301, at *2 (S.D. Miss. Jan. 9,

2007) (Starrett, J.) (quoting *Campbell, supra*).

A dispositive example of the legal insufficiency of the plaintiffs' unjust enrichment claim is the failure to allege even that the plaintiffs purchased gasoline from the defendants.  The plaintiffs argue that the allegations contained in Paragraphs 6 and 78 suffice to establish this material point.  However, as stressed repeatedly by the defendants, neither Paragraph in fact alleges that the plaintiffs purchased gasoline from any of the defendants.  *See* Complaint ¶ 6 (alleging that the defendants violated the Mississippi CPA's state-of-emergency pricing provision and were unjustly enriched); Complaint ¶ 78 (defining the putative class as "all persons who purchased gasoline during the declared state of emergency at an inflated price as compared to the price before the state of emergency was declared.").  The plaintiffs simply cannot prove any set of facts showing that the defendants were unjustly enriched by price gouging on the plaintiffs' gasoline purchases without first alleging that they purchased gasoline from the defendants.  Rather, the factual allegations comprising Count II are simply "labels and conclusions" which fail to "raise a right to relief above the speculative level."  *Twombly*, 127 S.Ct. at 1965.  Accordingly, the plaintiffs' claim for unjust enrichment should be dismissed.

## IV.  <u>COUNT III - PUNITIVE DAMAGES</u>

Count III of the Complaint asserts a claim for punitive damages, alleging that punitive damages are recoverable because the defendants' conduct was "willful, wanton and egregious." Complaint ¶¶ 100–01.  The defendants contend that this claim

fails as a matter of law and should also be dismissed.  The court agrees.

Punitive damages are not an independent cause of action, they are a remedy:

> [P]unitive damages are a remedy, not a cause of action. A claim for
> punitive damages is not itself a chose in action. It is not free-standing, i.e.,
> if there are no actual damages, then there is no right to sue for punitive
> damages.

*Kaplan v. Harco Nat. Ins. Co.*, 716 So. 2d 673, 680 (Miss. App. 1998).  *See also*

*Hopewell Enterprises, Inc. v. Trustmark Nat. Bank*, 680 So. 2d 812, 820 (Miss. 1996)

(holding that without actual damages, punitive damages are not recoverable); *Western*

*Union Telegraph Co. v. Jennings*, 110 Miss. 673, 70 So. 830, 831 (Miss. 1916) ("If [a

claimant] has no cause of action independent of a supposed right to recover exemplary

damages, he has no cause of action at all.").  Thus, since the court has ruled that

Counts I and II of the plaintiffs' Complaint fail to state a claim for the reasons noted

above, Count III—punitive damages—must also be dismissed.


### V.  DISMISSAL WITHOUT PREJUDICE - AMENDMENT OF THE COMPLAINT

In response to the defendants' motion, the plaintiffs request that they be allowed

to amend their Complaint.   As pointed out by the defendants, they could already have

done this as "the filing of a motion to dismiss will not prevent a party from subsequently

amending without leave of court."  6 WRIGHT & MILLER, supra, § 1483, at 585; *see*

*also Delta Environmental Products., Inc. v. McGrew*, 56 F. Supp. 2d 716, 717 n.1 (S.D.

Miss. 1999) (citing *Barksdale v. King*, 699 F.2d 744, 747 (5th Cir. 1983)).  However, in

situations where plaintiffs cannot remedy the flaws in their complaint, courts have

recognized the futility of granting plaintiffs leave to amend and denied the request. *See,*

*e.g., Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980)(*abrogated on other grounds, Todorov v. DCH Healthcare Auth*ority, 921 F.2d 1438 (11th Cir. 1991)).

The defendants aver that the plaintiffs' failure to amend their Complaint when that route is and has been open to them underscores the fact that the plaintiffs cannot remedy the Complaint's defects.  That may or may not be true.  It is clear that the plaintiffs may or may not be able to assert a valid private claim under the CPA's state-of-emergency pricing provision.  However, they will not be able to show they purchased gasoline from most of the defendants, as most of them do not sell gasoline directly to Mississippi consumers. It is equally clear that the plaintiffs will not be able to bring their CPA claims as a class, and that they have totally failed to adequately plead their unjust enrichment or constructive trust claims or that they will be able to recover punitive damages for their claims, as stated.  The court agrees with the defendants that the flaws in the plaintiffs' Complaint are extensive and critical, but not necessarily permanent.

The court therefore concludes that prior to the plaintiffs exhausting the requirement that they submit any potential claims for alleged violations of the Mississippi Consumer Protection Act to informal dispute resolution as approved by the Attorney General, any amendment of the present Complaint would prove fruitless.  This is especially true in light of the fact that the plaintiffs have done nothing in the face of the defendants' attacks on their poorly pled claims to remedy the flaws thus far.  However, in view of the fact that the court has not definitively ruled on whether the plaintiffs may assert a private right of action under the Mississippi CPA, dismissal with

34

prejudice would be error.  The plaintiffs' Complaint should thus be dismissed without prejudice.

IT IS THEREFORE ORDERED AND ADJUDGED that the Joint Motion to Dismiss **[#8]** filed on behalf of the defendants is Granted and the plaintiffs' Complaint is dismissed without prejudice and that all other motions are denied as moot.  A separate judgment shall be entered herein in accordance with Rule 58, Fed. R. Civ. P.

SO ORDERED AND ADJUDGED this the 24th day of September , 2007.


*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE